UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

---

| | |
|---|---|
| T.B. ALLEN AND ASSOCIATES, INC., | Civil No. 11-3479 (JRT/JSM) |
| Plaintiff, | **MEMORANDUM OPINION AND ORDER ON MOTION TO DISMISS** |
| v. | |
| EURO-PRO OPERATING LLC, | |
| Defendant. | |

---

Ronald R. Kirchoff, **KIRCHOFF LAW FIRM**, 325 Cedar Street, Suite 300, St. Paul, MN 55101, for plaintiff.

Kevin M. Decker, **BRIGGS & MORGAN, PA**, 80 South Eighth Street, Suite 2200, Minneapolis, MN 55402, for defendant.

Plaintiff T.B. Allen and Associates, Inc. ("T.B. Allen") brings claims of breach of contract and the implied covenant of good faith and fair dealing, failure to make prompt payment of commissions pursuant to Minn. Stat. § 181.145, promissory estoppel, and unjust enrichment against Euro-Pro Operating LLC ("Euro-Pro"). Euro-Pro moves to dismiss with prejudice almost all of T.B. Allen's claims.[1] The Court previously heard a motion to dismiss in this dispute and partially granted Euro-Pro's motion to dismiss T.B. Allen's claims. *T.B. Allen and Assocs., Inc. v. Euro-Pro Operating LLC*, Civil

---

[1] Euro-Pro seeks dismissal of the entire amended complaint, with the exception of the allegations in paragraphs 24 and 25, which deal with the failure to pay post-termination commissions for the 2012 fiscal year. (Def.'s Mot. to Dismiss at 1, Aug. 3, 2012, Docket No. 13.)

No. 11-3479, 2012 WL 2508021 (D. Minn. June 28, 2012). The dismissal was without prejudice, allowing T.B. Allen to amend its complaint to specify additional facts necessary to support its claims. *Id.*, at *1. T.B. Allen filed its amended complaint on July 22, 2012, and Euro-Pro promptly filed its motion to dismiss on August 3, 2012. The Court will grant in part and deny in part Euro-Pro's motion to dismiss.

## BACKGROUND[2]

### I. INITIAL AGREEMENT

Euro-Pro sells products related to garment care, floor care, and small kitchen appliances. (Am. Compl. ¶ 3, July 22, 2012, Docket No. 11.) In November 2005, T.B. Allen entered an oral sales representative agreement with Euro-Pro. (*Id.* ¶ 5.) In this agreement, T.B. Allen agreed to act as Euro-Pro's exclusive sales representative for accounts including Target, Kohl's, and Best Buy. (*Id.* ¶ 5.)

T.B. Allen received a commission payment of two percent of all net sales for all accounts. (*Id.* ¶¶ 6-7.) Euro-Pro fully compensated T.B. Allen according to that arrangement for the 2006, 2007, and 2008 fiscal years. (*Id.* ¶¶ 8, 10, 12.)

### II. PROPOSED CHANGES IN FISCAL YEAR 2009

Euro-Pro's 2009 fiscal year began on April 1, 2008, and ended on March 31, 2009. (*Id.* ¶ 13.) On November 13, 2008, Euro-Pro executives Mark Rosenzweig and Mark Barrocas met with Michael Lang of T.B. Allen. (*Id.* ¶ 14.) At this meeting, Rosenzweig

---

[2] This memorandum will set forth the facts as alleged in T.B. Allen's complaint.

and Barrocas informed Lang that Euro-Pro would be altering the commission structure. (*Id.* ¶¶ 14, 16.)

First, Euro-Pro imposed an $800,000 cap on commission payments for the 2009 fiscal year, notwithstanding the prior agreement mandating payment of two percent of all net sales. (*Id.* ¶ 14.) T.B. Allen alleges that the cap was unilaterally imposed without T.B. Allen's consent or agreement. (*Id.* ¶ 15.) Euro-Pro followed through with the commission cap, thereby withholding an alleged $319,140.70 in commissions earned by T.B. Allen under their contract during the 2009 fiscal year. (*Id.* ¶ 15.)

Second, Euro-Pro proposed changes to the commissions paid on two of T.B. Allen's largest accounts, Target and Kohl's, for the upcoming 2010 fiscal year. (*Id.* ¶ 16.) T.B. Allen agreed to this change at the November 13 meeting. (*Id.* ¶ 16.)

### III. FISCAL YEAR 2010

Euro-Pro's 2010 fiscal year began on April 1, 2009, and ended on March 31, 2010. (*Id.* ¶ 18.) For this fiscal year, T.B. Allen claims that Euro-Pro improperly withheld $238,180 of commission payments. (*Id.* ¶ 19.) T.B. Allen did not state why this commission payment was withheld, but it appears that it was withheld due to the commission cap.

### IV. FISCAL YEAR 2011

Euro-Pro's 2011 fiscal year began on April 1, 2010, and ended on March 31, 2011. (*Id.* ¶ 20.) In November 2010, Euro-Pro allegedly proposed a "new [and] reduced" structure that would further reduce T.B. Allen's commission payments. (*Id.* ¶¶ 20-21.)

The change would have applied beginning on October 1, 2010, and remained effective through the end of Euro-Pro's 2011 fiscal year. (*Id.* ¶ 21.) This proposal "was unacceptable to and rejected by" T.B. Allen. (*Id.* ¶ 22.) Despite this rejection, T.B. Allen claims that Euro-Pro withheld $791,038 in commission payments for fiscal year 2011. (*Id.* ¶ 23.) It is unclear if the commissions were withheld due to the changes proposed in November 2010, the earlier commission cap, or both.

## V. FISCAL YEAR 2012

Euro-Pro's 2011 partial fiscal year began on April 1, 2011, and ended on October 31, 2011. (*Id.* ¶ 24.) T.B. Allen claims that Euro-Pro improperly failed to pay it amounts in excess of $50,000 for this fiscal year. (*Id.* ¶ 25.) The contract between the parties was then terminated.

## ANALYSIS

### I. STANDARD OF REVIEW

Reviewing a complaint under a Rule 12(b)(6) motion to dismiss, the Court considers all facts alleged in the complaint as true and construes the pleadings in a light most favorable to the non-moving party. *See, e.g.*, *Turner v. Holbrook*, 278 F.3d 754, 757 (8th Cir. 2002). To survive a motion to dismiss, however, a complaint must provide more than "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action . . . .'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). That is, to avoid dismissal, a complaint must include "sufficient factual matter, accepted as true, to state a claim to relief that is

plausible on its face." *Id.* (internal quotation marks omitted). Rule 12(b)(6) also authorizes the Court to dismiss a claim on the basis of a dispositive legal issue. *Neitzke v. Williams*, 490 U.S. 319, 326-27 (1989).

## II. BREACH OF CONTRACT

The Court must first decide if T.B. Allen has adequately alleged its breach of contract claim. Under Minnesota law, T.B. Allen must demonstrate four elements to show a breach of contract: (1) a contract was formed, (2) T.B. Allen performed any required conditions precedent, (3) Euro-Pro materially breached the contract, and (4) T.B. Allen suffered damages as a result. *See Gen. Mills Operations, LLC v. Five Star Custom Foods, Ltd.*, 789 F. Supp. 2d 1148, 1155 (D. Minn. 2011) (citing *Parkhill v. Minn. Mut. Life Ins. Co.*, 174 F. Supp. 2d 951, 961 (D. Minn. 2000)).

The Court will assume without deciding that T.B. Allen had an at-will relationship with Euro-Pro. An oral promise to modify particular terms of at-will relationship can become part of a contract if the requirements for the formation of a unilateral contract are met: communication of a definite offer and acceptance for valuable consideration. *See Hayes v. K-Mart Corp.*, 665 N.W.2d 550, 553 (Minn. Ct. App. 2003). Acceptance for valuable consideration need not always be express. In the context of an employment relationship,[3] when an employer unilaterally offers a change in the terms of employment

---

[3] The parties have not discussed whether T.B. Allen's relationship with Euro-Pro was an employment relationship. At this stage, the Court finds that although it may not have been an employment relationship, it appears to have parallels to an employment relationship. *See* Minn.

(Footnote continued on next page.)

- 5 -

and informs the employee of the proposed change and the employee does not reject the change, the employee's retention of employment constitutes acceptance of the offer. *See, e.g.*, *Heath v. Travelers Cos.*, Civil No. 08-6055, 2009 WL 1921661, at *4 (D. Minn. July 1, 2009) (quoting *Pine River State Bank v. Mettille*, 333 N.W.2d 622, 627 (Minn. 1983)).

However, where one party has expressly rejected a proposed change, there is no modification to an at-will contract. This holding is supported by the Eighth Circuit's decision in *Simpson v. Norwesco, Inc.*, 583 F.2d 1007 (8th Cir. 1978). In this case, Simpson was a salesman working on commission, and Norwesco informed him that it would be reducing his commission rate. *Id.* at 1010. Simpson replied via letter, expressly stating that he would continue his employment "in accordance with the terms of the original agreement." *Id.* Norwesco did not respond or communicate to Simpson that he must either accept the new commission schedule or find other employment, but began paying Simpson according to the reduced commission rate. *Id.* at 1010-11. At trial, Simpson was awarded damages totaling the difference between the two commission structures. *Id.* at 1011. The Eighth Circuit affirmed the verdict, finding that Simpson's statement that he would continue under the original conditions "was far from any

_____
(Footnote continued.)

Stat. § 181.145 (referring to independent contractors, who are "commission salespersons," as being employed by the company for whom they were paid on the basis of commissions).

acquiescence in the proposed new commission scale," and thus that Norwesco's proposed changes were not incorporated into the contract. *Id.* at 1012.[4]

Here, as in *Simpson*, the Court finds that T.B. Allen has stated a breach of contract claim by alleging that it rejected the proposed changes to its contract. Specifically, T.B. Allen pled that it rejected[5] an $800,000 cap on commission payments imposed beginning in the 2009 fiscal year and rejected the "new [and] reduced" structure that would further reduce T.B. Allen's commission payments in fiscal year 2011. T.B. Allen could have been more specific in its complaint about the methods of its rejections and the subsequent breaches of Euro-Pro. However, pleadings can survive a motion to dismiss even when "allegations are not as specific as they could be." *See Chambers v. Travelers Cos.*, Civil No. 08-5947, 2009 WL 873124, at *2, 5-6 (D. Minn. Mar. 30, 2009) (allowing a breach of contract claim to move forward based on plaintiff's statement that she had earned and was owed a bonus under the terms of her contract and it was not paid after her termination, without stating the amount of the bonus or which contract provision gave her the right to a bonus). The Court finds enough detail in this complaint to allow T.B. Allen's breach of contract claims to survive.

---

[4] *See also Balderacchi v. Ruth*, 256 S.W.2d 390, 392 (Tenn. Ct. App. 1952) (stating that there was no modification to a contract because the plaintiff protested and promptly notified defendant that the full salary would be claimed).

[5] More precisely, T.B. Allen pled that it did not consent or agree to the $800,000 commission cap, but it did not explicitly plead that it rejected this change. It appears, however, that T.B. Allen intends to prove that it rejected this change. The Court finds that, although T.B. Allen's pleading should have been more precise, particularly in light of this Court's prior ruling, it is nonetheless specific enough to survive a motion to dismiss.

*Simpson* could be distinguishable because it involved a written employment contract that was terminable at the will of either party upon six months written notice. *See Simpson*, 583 F.2d at 1010. However, this distinction does not alter the Court's conclusion regarding the motion to dismiss. *Simpson* based its decision, in large part, on the fact that the plaintiff had protested the proposed changes to the commission schedule and thus had not accepted the change to the contract. *See id.* at 1011. Similarly here, the Court finds that there may have been no modification to the contract if, as T.B. Allen's alleges, it affirmatively protested to the proposed changes to its contract.[6] Accordingly, the Court will not dismiss the breach of contract claims.

## III. IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

The Court must next consider whether it is appropriate, as part of its breach of contract claim, for T.B. Allen to allege a violation of the implied covenant of good faith and fair dealing.[7] Specifically, T.B. Allen alleges that Euro-Pro breached the covenant by not paying commissions due and owing and engaging in "wrongful chargebacks, deductions, holdbacks, misrepresentations, and a unilateral capping of commissions[.]" (Am. Compl. ¶ 29.)

---

[6] *Simpson* also stated that its conclusion would have changed if the original employment contract had provided in specific language that the employer reserved the right to change the commission rates with no notice to the employee. *Id.* at 1011. However, there is no such agreement alleged in this case.

[7] Minnesota does not recognize a cause of action for breach of the implied covenant of good faith and fair dealing without an underlying breach of contract claim. *Medtronic, Inc. v. ConvaCare, Inc.*, 17 F.3d 252, 256 (8th Cir. 1994). Here, T.B. Allen has alleged a breach of the covenant as part of its breach of contract claim.

As a preliminary matter, the Court notes that it is unclear if an implied covenant of good faith and fair dealing applies to the agreement between T.B. Allen and Euro-Pro. *See Brozo v. Oracle Corp.*, 324 F.3d 661, 668 (8th Cir. 2003) (stating that there is no covenant in employment contracts)[8]; *but see In re Hennepin Cty. 1986 Recycling Bond Litig.*, 540 N.W.2d 494, 502 (Minn. 1995)) ("[u]nder Minnesota law, **every** contract includes an implied covenant of good faith and fair dealing requiring that one party not 'unjustifiably hinder' the other party's performance of the contract.") (emphasis added). The Court will assume without deciding that the covenant applies in this case.

To establish a violation of the implied covenant of good faith and fair dealing, a party must establish bad faith by demonstrating that the adverse party had an ulterior motive for its refusal to perform a contractual duty and that the party did not, instead, act negligently or make an honest mistake regarding its rights or duties. *See BP Prods. N.A., Inc. v. Twin Cities Stores, Inc.*, 534 F. Supp. 2d 959, 965 (D. Minn. 2007); *Sterling Capital Advisors, Inc. v. Herzog*, 575 N.W.2d 121, 125 (Minn. Ct. App. 1998). Bad faith may be shown through facts that support an inference of bad faith. *Zimmer Spine, Inc. v. Wainwright*, Civil No. 10-4725, 2011 WL 3035133, at *5 (D. Minn. July 7, 2011).

Here, the Court finds that T.B. Allen has failed to adequately plead facts that demonstrate – or even raise an inference of – bad faith. *See Sterling*, 575 N.W.2d at 125.

---

[8] It is possible that cases such as *Brozo* are meant to address only a covenant that would require good faith termination. *See Brozo*, 324 F.3d at 668; *Bratton v. Menard, Inc.*, 438 N.W.2d 116, 118-19 (Minn. Ct. App. 1989) (citing *Hunt v. IBM Mid America Employees Federal Credit Union*, 384 N.W.2d 853, 858 (Minn. 1986)). Furthermore, as stated above, T.B. Allen may not be an "employee" of Euro Pro, and thus *Brozo* may be inapplicable.

Although T.B. Allen refers nebulously to "misrepresentations," "deductions," and other such actions taken by Euro-Pro, it did not adequately allege the substance of these wrongful acts or plead that they were carried out in bad faith. Furthermore, T.B. Allen has failed to adequately allege that Euro-Pro's failure to pay commissions due and owing was done in bad faith. T.B. Allen claims that, beginning in the fiscal year 2009, Euro-Pro unilaterally informed T.B. Allen of changes it intended to make to its commissions and then imposed such changes. While it is possible that Euro-Pro's imposition of these changes constituted a breach of contract, T.B. Allen has not alleged that Euro-Pro imposed the changes in bad faith, that T.B. Allen communicated that it expected increased payments after it received its reduced commissions,[9] or any other facts that would raise an inference of bad faith. In other words, T.B. Allen has failed to plead facts demonstrating that Euro-Pro did anything more than make an honest mistake about its ability to change the commission structure. *See id.* Given the imprecision that riddles T.B. Allen's complaint, the Court will limit T.B. Allen's first count to breach of contract and dismiss its claim for a breach of the implied covenant of good faith and fair dealing.

## IV. PROMISSORY ESTOPPEL

The Court must next consider T.B. Allen's claim for promissory estoppel. There are three elements necessary to show promissory estoppel: (1) a clear and definite

---

[9] T.B. Allen did not allege the substance of any conversations between Euro-Pro and T.B. Allen on this subject, other than allegations that T.B. Allen rejected or did not agree or consent to the changes to the contract.

promise, (2) the intention of the promisor to induce reliance and the actual occurrence of such reliance, and (3) injustice if the promise is not enforced. *See Olson v. Synergistic Techs. Bus. Sys., Inc.*, 628 N.W.2d 142, 152 (Minn. 2001). "[T]he doctrine of promissory estoppel only applies where no contract exists." *Banbury v. Omnitrition Int'l Inc.*, 533 N.W.2d 876, 881 (Minn. Ct. App. 1995).

The fact that T.B. Allen brings a contract claim in addition to a promissory estoppel claim is not fatal, in and of itself, to the promissory estoppel claim. At this stage in the litigation, plaintiffs may pursue alternative theories at law and in equity. *See Khoday v. Symantec Corp.*, 858 F. Supp. 2d 1004, 1019 (D. Minn. 2012) (citing *Marty H. Segelbaum, Inc. v. MW Capital, LLC*, 673 F. Supp. 2d 875, 880 (D. Minn. 2009)). However, T.B. Allen's promissory estoppel claim fails because it is based on its breach of contract claim. *See Del Hayes & Sons, Inc. v. Mitchell*, 230 N.W.2d 275, 283 (Minn. 1975) ("Promissory estoppel is the name applied to a contract implied in law where no contract exists in fact.").

In its promissory estoppel claim, T.B. Allen alleges that "[Euro-Pro] promised [T.B. Allen] that it would pay [T.B. Allen] specific commissions on the sales of [Euro-Pro's] products generated by [T.B. Allen.]" (Am. Compl. ¶ 32.) This allegation does not give any context as to the terms of the promise or the payment terms attached to such a promise. Instead, the only apparent basis for this claim is earlier allegations made about

the terms of the contract between the parties. Because this promissory estoppel claim is based upon the terms of an alleged contract, it must be dismissed.[10]

## V. UNJUST ENRICHMENT

The Court must also consider T.B. Allen's claim for unjust enrichment. To establish a claim for unjust enrichment, T.B. Allen must show "that another party knowingly received something of value to which he was not entitled, and that the circumstances are such that it would be unjust for that person to retain the benefit." *See Khoday*, 858 F. Supp. 2d at 1018 (internal quotation marks omitted). "[T]o ensure that unjust enrichment is not used to reward a bad bargain, Minnesota courts require proof that 'a benefit was conferred unknowingly or unwillingly.'" *Holmes v. Torguson*, 41 F.3d 1251, 1256 (8th Cir. 1994) (quoting *Galante v. Oz, Inc.*, 379 N.W.2d 723, 726 (Minn. Ct. App. 1986)). The benefit must be obtained unjustly, meaning illegally, unlawfully, or morally wrongfully. *See Schumacher v. Schumacher*, 627 N.W.2d 725, 729-30 (Minn. Ct. App. 2001).

The Court will dismiss this claim for similar reasons as the promissory estoppel claim. T.B. Allen frames what it is owed under this equitable claim as "rightful commission payments" stemming from "promises, commitments and representations[.]" (Am. Compl. ¶ 39.) There is no definition of what promises were made or what were the

---

[10] T.B. Allen alleges that it has pled promissory estoppel in the alternative. The Court finds, as described, that T.B. Allen has instead based this claim on the breach of contract claim. It is particularly clear that this is not an alternative claim because there appears to be no suggestion that the contract between the parties might be invalid or lacking effect at any relevant time. *See UFE Inc. v. Methode Elecs., Inc.*, 808 F. Supp. 1407, 1414-15 (D. Minn. 1992).

"rightful" amounts owed, other than references to earlier aspects of the complaint that define the contract between the parties. Thus, this unjust enrichment claim is predicated upon the terms of the contract agreed upon between the parties, which is prohibited under Minnesota law. *See, e.g.*, *Sharp v. Laubersheimer*, 347 N.W.2d 268, 271 (Minn. 1984); *Taylor Inv. Corp. v. Weil*, 169 F. Supp. 2d 1046, 1060 (D. Minn. 2001) (stating that the "existence of an express contract" bars recovery for unjust enrichment). Accordingly, the Court will dismiss this claim.

### VI. FAILURE TO MAKE PROMPT COMMISSIONS UNDER MINN. STAT. § 181.145

Finally, under Minn. Stat. § 181.145, subdivision 2, entities employing a commission salesperson must promptly pay any commissions earned by the salesperson upon termination of the relationship. The statute requires that, when the entity terminates the salesperson, the commissions must be paid within three working days after the salesperson's final day of work upon the salesperson's demand. *Id.* § 181.145, subd. 2(b). Here, T.B. Allen alleges that when its relationship with Euro-Pro terminated, it did not receive all of the commissions it was owed. The Court will not dismiss this claim because, as explained above regarding the breach of contract claim, T.B. Allen has adequately alleged that Euro-Pro has not paid it the amounts owed under the contract. Accordingly, the Court will not dismiss this claim.

**ORDER**

Based on the foregoing, and the records, files, and proceedings herein, **IT IS HEREBY ORDERED** that Defendant's motion to dismiss [Docket No. 13] is **GRANTED in part** and **DENIED in part** as follows:

1. Defendant's Motion to Dismiss Plaintiff's Breach of Contract and Minn. Stat. § 181.145 claims is **DENIED.**

2. Defendant's Motion to Dismiss Plaintiff's Implied Covenant of Good Faith and Fair Dealing, Promissory Estoppel, and Unjust Enrichment Claims is **GRANTED**. These claims are hereby **DISMISSED with prejudice.**

DATED: January 4, 2013　　　　　　　　　　　　s/ John R. Tunheim
at Minneapolis, Minnesota.　　　　　　　　　　　JOHN R. TUNHEIM
　　　　　　　　　　　　　　　　　　　　　　United States District Judge